UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SCOTT HOUCK, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | No. CV-07-0365-CI <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 12, 15.) Attorney Lora Lee Stover represents Plaintiff; Special Assistant United States Attorney Terrye E. Shea represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment for Defendant.

Plaintiff Scott Houck (Plaintiff) protectively filed for disability insurance benefits (DIB) and Supplemental Security Income

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

(SSI) on September 15, 2004. (Tr. 358.) He alleges disability due to back pain, wrist pain, knee pain, and borderline intellectual function (BIF), with an onset date in October 2003. (Tr. 180, 358, 365.) Plaintiff's date of last insured for DIB purposes was March 31, 2007. (Tr. 52.)

Following a denial of benefits at the initial stage and on reconsideration, a hearing was held before Administrative Law Judge (ALJ) Paul Gaughen on March 20, 2007. (Tr. 82-85, 88, 359.) Plaintiff, who was represented by counsel, medical expert Jay M. Toews, Ed.D., and vocational expert Joseph Moisan, Ed.D., appeared and testified. (Tr. 360.) On March 30, 2007, ALJ Gaughen denied benefits. (Tr. 52-62.) Additional evidence was submitted to the Appeals Council, which denied review. (Tr. 5-9.) This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

1 Cir. 1995). The ALJ's determinations of law are reviewed
2 *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

## STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. Plaintiff was 41 years old at the time of the administrative hearing. (Tr. 373.) In

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1995, he was awarded disability benefits due to back problems and borderline intellectual functioning. (Tr. 363, 365.) However, he returned to work in 1996 and 1997 as a subcontractor for siding installation and continued to work until his alleged onset date. (Tr. 389.) Plaintiff reported he had a high school degree and most of his classes up to high school were in special education. (Tr. 375.) He testified he could read, write and do basic math. (Tr. 376.) He was single and living with a friend and her children. (Tr. 383.) He testified he did nothing around the house, and spent much of his time watching television. (Tr. 384.) Plaintiff had past work experience as a laborer (siding installer), dishwasher, janitor, mechanic and parking lot sweeper. (Tr. 112-17, 396-97.) He reported he stopped working due to back problems and pain. (Tr. 309, 394.)

### ADMINISTRATIVE DECISION

The ALJ found Plaintiff had not engaged in substantial gainful activity during the relevant time period. (Tr. 54.) At step two, he found Plaintiff has medically determinable impairments of "status post well healed fracture of the left wrist, mild patella grating of the left knee, and mild depression." (Tr. 55.) After a lengthy discussion of the medical evidence, Plaintiff's testimony, and medical expert testimony, the ALJ found Plaintiff was not credible, and his subjective symptom complaints were not sufficient to establish a severe impairment. He determined Plaintiff did not have a severe impairment or combination of impairments. (Tr. 55-60.) He concluded Plaintiff was not "disabled" as defined by the Social Security Act through the date of the decision. (Tr. 61.)

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff contends the ALJ erred when he (1) found no severe impairment, (2) improperly assessed Plaintiff's credibility, and (3) presented an incomplete hypothetical to the vocational expert. (Ct. Rec. 13 at 12-14.)

**DISCUSSION**

Plaintiff contends the medical evidence submitted regarding his mental and physical impairments is sufficient to satisfy the "*de minimis*" threshold at step two. In support of his claim of disability due to depression, Plaintiff submitted psychological evaluations by Robert Capes, Psy.D. (May 2005); Joyce Everhart, Ph.D. (December 2006); Frank Rosekrans, Ph.D, and mental health professional Kevin Shearer, M.A. (February 2005); and Dr. Rosekrans and mental health professional, Kathy Jamieson-Turn, M.S. (January 2006). Based on examining psychologist and the medical expert opinions, the ALJ found Plaintiff was not fully credible. (Tr. 60.) In support of this finding, the ALJ cited to the objective test results in reports by Drs. Everhart and Rosekrans, as well as medical expert testimony for Jay Toews, Ed.D. (Tr. 60, 283-93, 303-32.)

**A.   New Evidence**

Plaintiff appears to rely on a post-hearing psychological evaluation by Dr. Frank Hamilton, submitted to the Appeals Council as evidence that he is more limited than found by the ALJ. (Ct.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

Rec. 13 at 7-8.)  He also appears to contend that this report "undermines the ALJ's assessment of credibility." (*Id.* at 13.) However, the Appeals Council declined to credit this evidence because it did not relate to the period at issue. (Tr. 6.) The Appeals Council shall consider "new and material" evidence only if such evidence relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970; *Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir. 1990), *overruled on other grounds*, *Bunnell v. Sullivan*, 947 F.2d 341, 342 (9th Cir. 1991). Further, post administrative hearing psychological findings after an adverse decision are "notoriously" unreliable." *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *see also Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989). Because the new evidence is not relevant to the period at issue and was not considered by the Appeals Council, it is not considered by this court. 20 C.F.R. § 404.970(b)(1); *Bates*, 894 F.2d at 1064.

**B.   Credibility**

As stated by the Ninth Circuit:

> An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423 (d)(5)(A. . . .  This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce <u>some</u> pain; many medical conditions produce pain not severe enough to preclude gainful employment.

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, *see Cotton v. Bowen*, 799

F.2d 1403, 1405 (9th Cir. 1986), the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Id.* at 1281-82. If this test is satisfied, and if there is no evidence of malingering, then the ALJ, under the second step, may reject the claimant's testimony about severity of symptoms with "specific findings stating clear and convincing reasons for doing so." *Id*. at 1284. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d at 345-46. "[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v. Gardner*, 452 F.2d 855 n.7 (9th Cir. 1971). However, if malingering is established, the adjudicator is not bound by the "clear and convincing standard." *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

In addition to the "ordinary techniques of credibility evaluation," *Bunnell*, 947 F.2d at 346, the following factors may be considered in the adjudicator's assessment: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d at 947, 958-59 (9th Cir. 2002).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

The evidence shows that in May 2005, after an interview and mini-mental status examination (MMSE), Dr. Capes diagnosed depressive order NOS, rule out dysthymic disorder and cyclothymic disorder. (Tr. 257.) Dr. Capes did not administer objective psychological tests, and his diagnoses were based entirely on Plaintiff's self report. In July 2005, mental health counselor Kevin Shearer, under the supervision of Dr. Rosekrans, administered a battery of psychological tests as part of a comprehensive psychological evaluation over the course of two days. (Tr. 307-22.) The objective tests included the Wechsler Adult Intelligence Scale (WAIS-III) and Wechsler Individual Achievement Test (WIAT-II), the Conners' Continuous Performance Test, the Personality Assessment Inventory (PAI), the Beck Depression Inventory (BDI-II), the Beck Anxiety Inventory (BAI), a clinical interview, a Mental Status Examination, and Trail Marking Test, A and B. After a lengthy explanation of the test results and interpretation, the psychological team diagnosed Plaintiff with Malingering and Borderline Intellectual Functioning (BIF) that caused no more than mild limitations in his social and cognitive functioning. (Tr. 320, 324-25.) Specifically, the examining source observed despite Plaintiff's test responses that he was "scared and paranoid of people," and BAI results in the "severe range for anxiety," Plaintiff adapted well to the tasks given and presented as pleasant and cooperative. (Tr. 320.) The examiner reported that the test results were those of an individual who "is usually involved in some type of inpatient medical/psychiatric program, under close supervision for suicide precaution and severe monitoring." *Id*. As

noted by the examiner, these results were inconsistent with Plaintiff's behavior and report of daily activities, *i.e.*, Plaintiff was independent in his activities of daily living, was able to move freely, was able to walk up a flight of stairs, did not appear to use his cane for assistance, could sit for prolonged periods during testing, and reported a meaningful relationship with his significant other. (Tr. 320.) In addition, test results from the PAI were invalid, and indicated extremely negative self-presentation and malingering. (Tr. 319.) Although BIF was diagnosed, Dr. Rosekrans and Mr. Shearer opined Plaintiff was suitable for on-the-job training and capable of work. (Tr. 322.)

Dr. Everhart administered objective psychological tests in December 2006. (Tr. 283-90.) Based on the results, Dr. Everhart found clear evidence of malingering and failure to make a credible effort on intelligence tests. (Tr. 286, 289.) She warned that results of the intelligence tests (WAIS III) should be "interpreted with caution as they may not represent a credible effort." (Tr. 288.) She observed Plaintiff did not need help to complete his activities of daily living, that he could cook, pay bills, clean, do laundry and attend to his personal hygiene. (Tr. 286-87, 289.) Although he presented as mildly depressed, angry and irritated, Dr. Everhart opined his attention, concentration and intellectual ability were within normal limits. (Tr. 286, 289.) She diagnosed malingering, pain disorder, learning disorder NOS, and depressive disorder NOS (by history), which as noted, was unreliable. (Tr. 289.)

In January 2006, Dr. Rosekrans and mental health professional

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

Kathy Jamieson-Turner, M.S., re-evaluated Plaintiff. (Tr. 327-32.) Extensive objective tests were administered, including the Test of Memory and Malingering (TOMM), the BDI-II, and MMPI-2, all of which were found invalid and/or indicative of malingering and exaggeration of symptoms. (Tr. 329-30.) The examiner also observed behavior incongruent with test results and concluded, "There was nothing in [Plaintiff's] presentation to suggest he is sufficiently impaired psychologically to prevent him from working." (Tr. 332.)

At the hearing, Dr. Toews summarized the psychological evidence and testified that Dr. Everhart's IQ testing was not reliable due to the extent of malingering indicated by the objective testing results in her report. (Tr. 367-68.) He opined Plaintiff's BIF caused only slight limitations based on the medical record in its entirety, and factoring in the unreliability of Plaintiff's self-report and poor effort on testing. (Tr. 366-71.) Medical expert testimony relied upon by the ALJ is well supported by and consistent with other evidence in the record; therefore, the ALJ properly relied on Dr. Toews' opinions. *Andrews,* 53 F.3d at 1041.

The evidence as a whole includes extensive affirmative evidence of malingering; therefore, the "clear and convincing" standard did not apply. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Nonetheless, the ALJ gave other specific reasons to discount Plaintiff's credibility. For example, he first noted there was no medical evidence of abnormality that would account for the severity of Plaintiff's complaints. (Tr. 60.) This is a valid consideration that is supported by the evidence discussed above and reports from

orthopedic specialist Dr. Bagby,[1] who found no objective evidence of abnormalities in Plaintiff's lumbar spine and opined Plaintiff was capable of light to medium work. (Tr. 249, 341.) *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Rollins*, 261 F.3d at 856-57. The ALJ noted Plaintiff carried a cane that was not prescribed, and Waddell tests were positive. (Tr. 60.)  It also is noted on independent review if the record that Plaintiff's treatment provider at Community Health Association of Spokane observed although Plaintiff presented with a cane, he did not use it during the examination and did not limp. (Tr. 236.) Mr. Shearer and Dr. Bagby made a similar observations. (Tr. 247, 320.) In January 2007, examining physician Michael Carraher, M.D., observed Plaintiff's gait while walking in the parking lot was much better than his gait on exam and reported "his physical complaints significantly outweigh the findings on exam." (Tr. 59, 294, 297.)  The ALJ also noted Plaintiff inconsistently reported back pain, wrist surgeries, and blindness in his left eye to the various examiners. (Tr. 60-61.)

The ALJ further found Plaintiff was able to learn auto mechanics and worked as a mechanic between 1997 and 2003, belying his claims of cognitive deficiency. (Tr. 60, 393-94.)  He noted that IQ scores went down from the school records without evidence of injury or trauma. (Tr. 60.) As discussed above, Drs. Everhart and Dr. Toews expressed doubt that recent IQ tests results were

---

[1] Under the Regulations, the opinions of medical specialists are generally given more weight than doctors who do not specialize in the relevant practice area. 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).

1  accurate, due to objective evidence of poor effort. (Tr. 288, 367.)
2  These are specific reasons supported by substantial evidence to
3  discredit credibility. *Fair*, 885 F.2d at 603-04. Combined with the
4  significant diagnoses of malingering, the reasons given by the ALJ
5  for rejecting the severity of Plaintiff's statements are "clear and
6  convincing."  The ALJ did not err in his credibility assessment.

**C.   Step Two Evaluation**

To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. It follows that credibility is properly considered when there are significant consistencies between a claimant's symptom allegations and the medical evidence. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. §§ 404.1529, 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of pain or symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th ,Cir. 1991). The Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be "non-severe" *only* when evidence establishes a "slight abnormality" that has "no more than a *minimal effect* on an individual's ability to work." *Id.* (*citing Social Security Ruling*

*(SSR)* 85-28).  In *SSR* 96-4p, "the Commissioner emphasized the importance of objective medical evidence to a determination of disability."  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  "At step 2 of the sequential evaluation process, an impairment or combination of impairments is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities."  *SSR* 96-3p.  Medical evidence, alleged symptoms and other evidence must be considered when determining whether an impairment, or combination of impairments, is severe. *Id.*

Although the ALJ identified medically determinable impairments of post status wrist fracture, mild patella grating of the left knee and mild depression, after a thorough discussion of medical evidence and consideration of the record in its entirety, he found none of the impairments alone or in combination "significantly limited (or is expected to significantly limit) [Plaintiff's] ability to perform basic work-related activities for 12 consecutive months." (Tr. 59.) This step two finding is supported by Dr. Bagby's 2005 report as well as imaging of the lumbar spine.  (Tr. 239, 248-49.)  On re-evaluation in 2006, Dr. Bagby found full range of motion in the left knee and no grating or other abnormalities. (Tr. 340.)  This evidence is also consistent with Dr. Carraher's findings in 2007,[2] (Tr. 297), as well as the assessments made by agency physicians. (Tr. 282.)  As discussed above, the examining psychologists

---

[2] Imaging reviewed by Dr. Carraher showed a "minimal wedge compression at L1," but the doctor found no tenderness in this area. (Tr. 296.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

consistently found affirmative evidence of malingering in objective test results.  This factor significantly discredited Plaintiff's allegations of disability due to physical and mental impairments.

Plaintiff's unreliable statements alone cannot establish the requisite level of severity at step two. *SSR* 85-28.  It is the ALJ's responsibility to resolve conflicts and ambiguities in the evidence. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1195-96 (9th Cir. 2004).  Plaintiff's complaints of pain, limitations and depression to examining physicians and psychologists were properly discounted by the ALJ in light of clear evidence of malingering.  The ALJ took great care in discussing and evaluating the medical evidence before concluding Plaintiff's established impairments were not severe. Because the entire record supports the ALJ's credibility assessment, his interpretation of the medical evidence, and resolution of the conflicts between Plaintiff's statements and the medical evidence, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1098. Having found no impairment or combination of impairments that significantly limits Plaintiff's ability to perform basic work activities, the ALJ properly concluded at step two that Plaintiff was not under a disability during the period at issue. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).  Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is **DENIED.**

2. Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 15)** is **GRANTED**.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

1  The District Court Executive is directed to file this Order and
2 provide a copy to counsel for Plaintiff and Defendant.  The file
3 shall be **CLOSED** and judgment entered for **DEFENDANT**.
4  DATED November 3, 2008.

                     S/ CYNTHIA IMBROGNO
                  UNITED STATES MAGISTRATE JUDGE